Gary H. Simone, Kurt S. Rishor, Butler, Pa., for plaintiff.

David L. Nixon, Pittsburgh, Pa., for defendant.

**In the Matter of W. Byron SCHLAG, Debtor.**

**W. Byron SCHLAG, Plaintiff,**

v.

**Leonard M. MENDELSON, Defendant.**

**Bankruptcy No. 85–2163.**
**Motion No. 86–323.**

United States Bankruptcy Court,
W.D. Pennsylvania.

May 14, 1986.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before this Court is the Debtor's Motion For Impairment And Reduction Of Judgment Note Interest Rate, pursuant to 41 P.S. § 301. W. Byron Schlag (hereinafter "Debtor") claims that the interest rate charged him by the holder of the Judgment Note, Leonard M. Mendelson (hereinafter "Mendelson"), is usurious and in violation of Pennsylvania law commonly known as "Act Six".

Mendelson claims that the loan is exempted from the general provisions of 41 P.S. § 301 by the specific language of § 301(f)(v), allowing parties to a business loan with a principal amount greater than $10,000.00 to reach a contractually satisfactory interest rate, irrespective of any ceiling set by the general provisions of the

statute. Additionally, Mendelson seeks postpetition interest at the contract rate pursuant to 11 U.S.C. § 506(b).

Based upon the pleadings, briefs, and a hearing thereon, this Court has determined that the interest rate on the Judgment Note is not in violation of the Pennsylvania law. Further, Mendelson is entitled to obtain postpetition interest at the contract rate.

## FACTS

In March of 1981, the Debtor executed a demand note in favor of Mendelson for a principal amount of $20,825.00. This loan was made to finance the Debtor's business activity. The market rate of interest at the time was very high, at times reaching eighteen percent (18%) per annum. It appearing that the business proposition constituted a significant investment risk, the parties agreed to a substantially higher interest rate of thirty percent (30%) per annum.

Thereafter, Mendelson obtained a lien on the Debtor's residential property by filing the Judgment Note with the Prothonotary's Office in Butler County, Pennsylvania.

The Debtor filed a petition under Chapter 11 of the Bankruptcy Code on September 26, 1985. As of that date, none of the debt had been paid, and the total principal and interest outstanding was $49,199.06.

## ANALYSIS

41 P.S. § 101 et seq. (hereinafter "Act Six") was enacted by the Pennsylvania legislature to create a ceiling on the amount of interest allowable on residential mortgages, and to provide homeowners additional rights in the event a foreclosure action was imminent.

Section 101 of Act Six defines a "residential mortgage" as:

> [a]n obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000.00) or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units or in which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium unit.

The legislature provided for a series of exceptions to this maximum interest rate in Section 301(f) of Act Six. The parts of the section which the parties have raised include the following:

> (f) The maximum lawful rate of interest set forth in this petition and in Article II of this Act shall *not* apply to ... (ii) an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,-000.00) or less, evidenced by a security document and secured by a lien upon real property, other than residential property as defined in this Act; ...or (v) business loans the principal amount of which is in excess of ten thousand dollars ($10,000.00).

The Debtor claims that since the property in question is residential, the (f)(ii) exception is inapplicable. We agree. However, the Debtor has not shown why the (f)(v) exception should be held inapplicable as well.

At the hearing on this matter, the Debtor was specifically instructed to address his brief to the (f)(v) issue. This he has not done, arguing only that the general provisions of Act Six bring the lien in question into the definition of "residential mortgage". There is no indication in (f)(v), as there is in (f)(ii), limiting business loans of greater than $10,000.00 to attachments of *non-residential* real property. Since this specific language does appear in (f)(ii), this Court must assume that the legislature chose not to include a similar requirement in (f)(v).

Furthermore, when the general provisions of a statute, such as Sections 101, 301(b) and 301(d), conflict with special provisions in the same statute, such as Section 301(f), in a manner which is irreconcilable, the special provisions must prevail. 1 Pa. C.S.A. § 1933. Indeed, the Act Six heading above Section 301 is titled "Exceptions to

Maximum Lawful Interest Rate", indicating that the legislature purposefully excluded these specific loan transactions from the interest rate ceiling of the general provisions.

■ The Debtor's argument against (f)(ii) appears valid. However, the five exceptions are connected disjunctively by the word "or"; this means that a loan transaction must meet the requirements of only one of the five exceptions in order to be excluded from the maximum interest rate. Here, we have an admitted business loan, in a principal amount greater than $10,-000.00. That is all that Mendelson must show in order to prevail. The Debtor has stipulated to both facts; therefore Mendelson has met his burden.

There remains the issue of postpetition interest claimed by Mendelson under 11 U.S.C. § 506(b) which states:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

■ The amount due on the loan as of the date of filing was $49,199.06. While no appraisals of the actual value of the residential property have been submitted, all parties agree that the property is worth over $100,000.00. The property is encumbered by a mortgage subsequent in time to Mendelson's lien. However, a senior mortgagee is entitled to priority for postpetition interest before satisfaction of the junior mortgagee's prepetition claim. *See Matter of Maimone,* 41 B.R. 974, 981 (Bktcy.D.N. J.1984); *Wolohan Lumber Co. v. Robbins,* 21 B.R. 747, 751 (Bktcy.S.D.Ohio 1982).

■ Furthermore, Mendelson is entitled to the contract rate of interest postpetition as well.

> ... [p]ostpetition interest should be computed at the rate provided in the agreement under which the claim arose, the so-called "contract rate" of interest.

The great majority of courts which have considered the issue have utilized the contract rate, and this result appears consistent with prior case law.

3 Colliers on Bankruptcy ¶ 506.05, p. 506–42.

The rationale behind this majority interpretation is best stated by the court in *In re Loveridge Machine & Tool Co., Inc.,* 36 B.R. 159 (Bktcy.D.Utah 1983):

> [N]either should be selection of an interest rate be influenced by favoritism of debtors over creditors, creditors over debtors or of some creditors over others. Using the lawful rate where there is a contract avoids such errors and provides a rule which is easily applied and consistent with authority and reason.
>
> Using any interest rate other than the contract rate, where there is a contract, would produce irrational results ...

*Id.* at 162–63. *See also Matter of Maimone, supra* at 979.

Two courts have decided that § 506(b) allows the use of interest rates other than the contract rate. *In re Marx,* 11 B.R. 819 (Bktcy.S.D.Ohio 1981) (legal rate); *In re Minguey,* 10 B.R. 806 (Bktcy.W.D.Wis. 1981) (10% rate). However, these decisions have been viewed as improper attempts to apply § 506(b) to determine the appropriate interest rate to be paid on secured indebtedness under a Chapter 13 arrangement. *See* 3 Colliers on Bankruptcy, *supra,* at 506–42-3. We therefore find that Mendelson is entitled to his contract rate of interest until the payment of the secured claim, or the effective date of a Plan.

While the Court is of the opinion that the contract rate of interest is high by present standards, it is not the Court's prerogative to rewrite the terms of the agreement entered into freely by these parties. Clearly there must have existed significant credit and investment risks when the parties entered into this contract.

While the Court has not been made privy to all of the economic and commerical circumstances surrounding the loan transaction, the Court does acknowledge that the Debtor, as a businessman, would not have entered into a contract with a significantly

high rate of interest if in fact other alternatives had been available.

Evidence of the Debtor's situation is illuminated somewhat by a companion transaction with Mendelson on a commercial mortgage for $100,000.00 at thirty percent (30%) interest per annum. The Debtor had been unable to obtain a more favorable rate of interest even from standard banking institutions; and, chose to enter into a contract with Mendelson. At a foreclosure hearing in state court, the court, having significantly greater factual information upon which to render a decision, determined that the investment risk involved in that transaction did not render the thirty percent (30%) interest rate unconscionable.

The Debtor may have considered the interest rate excessive. However, his business judgment was that the necessity of the loan outweighed the burden of the interest. The Court cannot and should not disturb this judgment by altering the terms of the contract through the benefit of hindsight.

An appropriate Order will be issued.